**JOHN P. SQUIRE CO. v. UNITED STATES.**

No. 44048.

Court of Claims.
Jan. 8, 1940.

W. Parker Jones, of Washington, D. C., for plaintiff.

Guy Patten, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

LITTLETON, Judge.

The amount of $82,662.87, which plaintiff herein seeks to recover, represents the export drawback refund which the Agricultural Adjustment Act authorized to be made upon proof of exportation to a foreign country of products subject to the processing tax imposed by that act. Certain of the products were exported by plaintiff's predecessor between November 4, 1933, and March 5, 1934, and the others were exported by plaintiff between March 5 and December 31, 1934. Thereafter plaintiff duly filed claims for the export drawback refunds of the amounts of the floor stocks and the processing taxes imposed by the Agricultural Adjustment Act upon the products so exported by plaintiff and its predecessor. These refund claims were filed in 1934 by plaintiff in accordance with the regulations of the Commissioner of Internal Revenue and the provisions of section 17 (a) of the Agricultural Adjustment Act as amended,

U.S.C.Supp. III, Title 7, Section 617(a), 7 U.S.C.A. § 617(a). Plaintiff made proof of the exportation of the product and of the payment by the processors of the floor stocks and the processing tax applicable thereto. Between September and December, 1934, the Commissioner of Internal Revenue allowed the claims for the export drawback refunds on account of the processing taxes, aforesaid, and issued checks therefor payable to the North Packing & Provision Company and the White, Pevey and Dexter Company, in whose names the products had been exported by such companies, and by plaintiff as successor thereto. The Commissioner transmitted these checks to the collector at Boston, Massachusetts. Upon receipt of these drawback refund checks, the collector returned the same to the Comptroller General during November and December, 1934, and in January 1935, and advised plaintiff that this was being done for the reason that he was not permitted to release the checks issued in the name of the other corporations which had been taken over by plaintiff, and that plaintiff should make application for the refund checks to the Comptroller General. Thereafter plaintiff furnished to the General Accounting Office proof of the circumstances under which it acquired all the properties of the corporations to which the refunds had been allowed on claims filed by plaintiff. Before the export drawback refund checks were delivered by the Comptroller General, further processing taxes imposed by the Agricultural Adjustment Act became due from plaintiff, who was also a processor, and were unpaid for the months of May and June 1935 in the respective amounts of $148,608.85 and $163,743.15, and for subsequent months. For this reason the Comptroller General canceled the refund checks totaling $82,662.87 and transferred that amount from the official balance of the drawer and the same was covered into the Treasury of the United States on December 18, 1935, as a credit against and collection of the outstanding and unpaid processing taxes appearing against the plaintiff for the month of May 1935.

While the checks for the refunds allowed by the Commissioner were in the hands of the Comptroller General, but before the Comptroller on December 13 and December 17, 1935, canceled the checks and issued certificates of credit thereof to the unpaid processing tax, plaintiff, on August 7, 1935, in a suit against the collector of revenue at Boston, Massachusetts, had obtained from

the United States District Court a preliminary injunction against the collector restraining him from collecting from plaintiff processing taxes amounting to $312,352 for hog products processed during the months of May and June, 1935, and from collecting from plaintiff any other taxes under the Agricultural Adjustment Act.

Plaintiff bases its right to recover the export drawback refunds on the ground that the set-off, or credit, by the Comptroller General was unlawful because it had obtained an injunction against the collector restraining him from collecting the processing tax and had given a bond in the District Court for Massachusetts for the accrued and unpaid processing tax. This position cannot be sustained. The preliminary injunction restrained only the collector of revenue at Boston from collecting any processing taxes due from plaintiff under the provisions of the Agricultural Adjustment Act. The injunction by its own terms shows that it did not apply to the Commissioner of Internal Revenue or to the Comptroller General for it recognizes that credits, in respect of the processing taxes which it restrained the collector from collecting, might be made by these officials. Moreover, the District Court could not have effectively enjoined these officials from making authorized credits for the reason that they were not within the jurisdiction of the court. Moreover, the Court had no control and did not attempt to exercise any control over the disposition of any refund that might be due plaintiff. The preliminary injunction so far as it related to credits in respect of processing taxes unpaid at the date of the injunction, or thereafter becoming payable, was as follows:

"This injunction is granted upon the condition that the plaintiff shall give and file with the Clerk of this Court a bond with surety acceptable to this Court, the penalty of which shall be in the principal sum of $312,352, covering the alleged processing taxes due for the months of May and June 1935, and a like bond in the principal amount equal to the alleged processing taxes as shown in the return filed by the plaintiff for each month if and when such processing tax is alleged by the defendant to become due, on or before one day after each of such due dates, and the continuation of said preliminary injunction as to said taxes, penalties, and interest for months subsequent to June 1935, shall be conditioned upon the giving by the plaintiff of such additional bond.

"And upon the further condition that the plaintiff shall, without prejudice, each month, at the time and in the manner provided in the said Agricultural Adjustment Act, and the regulations issued thereunder, file a monthly return showing the number and weight of hogs processed by the plaintiff each month, together with a computation of the amount of the alleged processing tax thereon, with the defendant and with the Clerk of this Court, and will file with the Clerk of this Court a surety bond as hereinabove provided in the principal amount of said monthly installments of alleged processing tax, less such amount or amounts as the Commissioner of Internal Revenue may have abated, credited or set off against any of said alleged processing taxes, and less any further sum that the Comptroller General or the General Accounting Office may have set off against any of said processing taxes."

The credit by the Comptroller General of the export drawback refunds previously allowed by the Commissioner was in all respects legal, proper, and timely when made and such credit, when made, constituted a collection, to that extent, of the processing taxes then owing by plaintiff. Since the processing taxes, as so satisfied by the credit, were at the time outstanding against plaintiff and unpaid, and were collectible by such credit, plaintiff's remedy in the premises is by claim for refund of the processing taxes so collected under sections 902, 903, 904, and 906, Title VII of the Revenue Act of 1936, 49 Stat. 1648, 7 U.S.C.A. §§ 644–646, 648.

Plaintiff's claim that it is entitled to maintain this suit and to recover the export drawback refund on an account stated cannot be sustained. Under section 305 of the Budget and Accounting Act of 1921, 31 U.S.C.A. § 71, the Comptroller General possessed authority to adjust and settle the accounts between the Government and the plaintiff when the matter reached him through the return of the checks by the collector. When these accounts were adjusted, the account, as stated, showed no balance in favor of plaintiff. The petition must, therefore, be dismissed. It is so ordered.